UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMERIFACTORS FINANCIAL GROUP,
LLC,

      Plaintiff,

v.                                Case No:  6:13-cv-1446-Orl-22TBS

ENBRIDGE, INC., GLOBAL ENERGY
CONTRACTORS, LLC and SAMMIE L.
MOFFETT,

      Defendants.

_____

## ORDER

This case comes before the Court on Plaintiff's Motion for Authorization to Conduct

Jurisdictional Discovery and for Extension of Time to Respond to Motion to Dismiss for

Lack of Jurisdiction over Defendant.  (Doc. 12).  The motion is due to be granted.

## BACKGROUND

Plaintiff Amerifactors Financial Group, LLC filed this case in state court, alleging in

Count I, that Defendant Enbridge, Inc. ("Enbridge") breached a contract between the

parties; in the alternative, in Count II for promissory estoppel against Enbridge; in Count

III for breach of contract against Defendant Global Energy Contractors, LLC; and in Count

IV for breach of guarantee by Defendant Sammie L. Moffett.  (Doc. 2).  The action against

Enbridge is based upon two blanket payment contracts signed by Terry Wheeler and

Quinton Brown.  The contracts list Enbridge as the "client" and identify Wheeler as a

Construction Superintendent and Brown as a Construction Supervisor.  (Doc. 2-1 p. 15;

Doc. 2-2, p. 1).  The complaint alleges that Enbridge is a Canadian corporation with its

principal place of business in Canada.  (Doc. 1, ¶ 2).  Plaintiff avers that Enbridge is subject to jurisdiction in the state of Florida either because it breached a contract in Florida, see FLA. STAT. § 48.193(1)(g), or because it otherwise performed acts subjecting it to jurisdiction under § 48.193.  (Id., ¶ 21).

On September 9, 2013 Enbridge moved to dismiss the case for lack of personal jurisdiction.  (Docs. 1-4, 3).  The motion is based upon the affidavit of Enbridge's Vice President and Corporate Secretary, Tyler Wade Robinson.  (Doc. 17-1).  In his affidavit, Robinson states that: Enbridge is a Calgary-based corporation organized under Canadian law; Enbridge does not do business or sell or advertise any of its products in Florida and has never registered as a foreign corporation or maintained an office in Florida; Enbridge is not a party to any contracts at issue in this case; Enbridge has never employed Wheeler and Brown; Wheeler and Brown lacked authority to enter any contract on Enbridge's behalf; and Enbridge has never conducted business at the Texas address where Amerifactors communicated with Wheeler and Brown.  (Id.).  On September 18, Enbridge removed the case to this Court (Doc. 1), and on October 3, 2013 Amerifactors filed the pending, opposed motion for leave to conduct jurisdictional discovery

## LEGAL STANDARDS

A.  Personal Jurisdiction

With limited exceptions not relevant here, a federal district court may exercise personal jurisdiction over a defendant only when the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  FED. R. CIV. P. 4(k)(1)(A).  Unless the state in which a court sits authorizes its own courts to exercise jurisdiction to the limits of what the Constitution allows (and Florida does not, see Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla. 1989)), the Court must

conduct a two-step inquiry to determine whether it has personal jurisdiction over a particular defendant.  See Mutual Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d, 1312, 1319 (11th Cir. 2004).

First, exercising personal jurisdiction must be appropriate under one of the provisions of Florida's long-arm statute.  Id.; see FLA. STAT. § 48.193.  The provision most obviously relevant to this case is paragraph (1)(g), which authorizes jurisdiction over a defendant "who personally or through an agent . . . breach[es] a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]," for claims arising from the breach.  Enbridge's motion to dismiss anticipates two other potential bases for jurisdiction: paragraph (1)(a), which permits jurisdiction over claims arising from the defendant's "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in [Florida];" and subsection (2), which authorizes jurisdiction over "a defendant who is engaged in substantial and not isolated activity within [Florida]" for all claims, whether or not they arise from the defendant's activities in Florida.

Second, if Florida's long-arm statute authorizes the exercise of personal jurisdiction over the defendant, the Court must consider whether the exercise of jurisdiction would violate due process.  Mutual Serv., 358 F.3d at 1319.  Due Process requires that a defendant have sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 210, 216 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  To satisfy the minimum contacts requirement, there must "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits

and protections of its laws." <u>Hanson v. Denckla</u>, 357 U. S. 235, 253 (1958).  Once the plaintiff has shown purposeful availment, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985).

Since <u>International Shoe</u>, courts have identified two kinds of jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S. Ct. 2846, 2851 (2011) (quoting <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414, nn. 8, 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).  A court may exercise general jurisdiction over a foreign corporation only when its "affiliation[] with the [s]tate [is] so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." <u>Id.</u> (quoting <u>Int'l Shoe</u>, 326 U.S. at 317).  "Specific jurisdiction, on the other hand, depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation." <u>Id.</u> (internal quotations omitted).

The fact pattern in this case is a familiar one: an out-of-state corporation (allegedly) breaches a contract with an individual or entity located in the forum state, by failing to perform a contractual obligation in the forum state.  Since <u>International Shoe</u>, the Supreme Court has decided two cases that fit this pattern, each time finding personal jurisdiction.  In <u>McGee v. International Life Insurance Co.</u>, 355 U.S. 220 (1957), a California resident purchased a life insurance policy from an Arizona-based insurance company.  <u>Id.</u> at 221.  The defendant, an insurance company based in Texas, had agreed to assume the original insurer's obligations under the policy and sent the insured a reinsurance certificate offering to insure him on the same terms as he was currently

insured.  Id.  The insured accepted the offer and, until he died in 1950, paid premiums by

mail from his home in California to the defendant's office in Texas.  Id. at 221-22.  The

Court held that the defendant was subject to personal jurisdiction in California, even

though neither it nor the original insurer ever had an office or agent in California or ever

solicited or did any other insurance business in California.  Id. at 222, 224.  The Court

explained that it was "sufficient for purposes of due process that the suit was based on a

contract which had substantial connection with that State."  Id. at 224.

       The Court's next foray into personal jurisdiction law in contract cases came in

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).  There, the defendant Rudzewicz

entered into a franchise agreement with Burger King, a Florida corporation, to open a

franchise in Drayton Plains, Michigan.  Id. at 467-68.  During negotiations, Rudzewicz

communicated with Burger King's offices in Miami and Birmingham, Alabama.  Id. at 468.

Burger King cancelled the agreement after Rudzewicz fell behind on payments, but

Rudzewicz continued to operate the restaurant anyway.  Id.  Burger King sued Rudzewicz

in the United States District Court for the Southern District of Florida, alleging in its

complaint that Rudzewicz had failed to make payments required to be made to Burger

King's Miami headquarters and was tortiously infringing Burger King's trademarks and

service marks by operating an unauthorized restaurant.  Id. at 468-69.  In its opinion, the

Court noted that "an individual's contract with an out-of-state party alone" cannot

"automatically establish sufficient minimum contacts in the other party's home forum," but

that other factors–such as "prior negotiations and contemplated future consequences,

along with the terms of the contract and the parties' actual course of dealing–[must] be

evaluated in determining whether the defendant purposefully established minimum

contacts with the forum."  Id. at 479 (emphasis in original).  The Supreme Court held that

Burger King could sue Rudzewicz in Florida because the franchise dispute "grew directly out of 'a contract which had a substantial connection with [Florida],'" and because other factors did not render jurisdiction unreasonable in that case.  Id. at 479, 487 (quoting McGee, 355 U.S. at 223).

      B.  Procedures for Deciding a Motion to Dismiss for Lack of Personal Jurisdiction

      When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009).  "A district court may decide a motion to dismiss for lack of personal jurisdiction 'on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" Shakour v. Federal Republic of Germany, 199 F. Supp. 2d 8, 14-15 (S.D.N.Y. 2002) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).  "[A] judge may make factual findings necessary to resolve [a] motion[] to dismiss for lack of personal jurisdiction." Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008).

      If the district court chooses to decide a motion without an evidentiary hearing or jurisdictional discovery, a plaintiff need only establish a prima facie case of personal jurisdiction over the nonresident defendant. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1990)).[1] A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. Id. (citing Morris, 843 F.2d at 492).  Where there are disputed issues of fact, it may be appropriate for the court to conduct an evidentiary hearing on personal

---

[1] Accord Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir, 2001); A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79 (2d Cir. 1993); Kelly v. Syria Shell Petroleum Development, B.V., 213 F.3d 841, 854 (5th Cir. 2000); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

jurisdiction.  <u>Bruce v. Fairchild Indus., Inc.</u>, 413 F. Supp. 914, 915 (W.D. Okla. 1974).

<u>See also</u> <u>Venetian Salami</u>, 554 So.2d at 503.[2]  Whether to hold an evidentiary hearing is

in the sound discretion of the district court.  <u>Gregory v. EBF & Assocs., L.P.</u>, 595 F. Supp.

2d 1334, 1336 (S.D. Fla. 2009).

     In many cases, the court need not look beyond the pleadings to decide

jurisdictional questions.  For example, when confronted with a "facial" attack on subject

matter jurisdiction, the court need only consider whether the plaintiff has sufficiently

alleged a basis for subject matter jurisdiction in his complaint, taking the allegations in the

complaint as true.  <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990).  "Factual"

attacks on subject matter jurisdiction may require the court to resolve disputed facts, but

not always.  When the defendant's attack on subject matter jurisdiction also implicates the

underlying merits of the plaintiff's claim, "'[t]he proper course of action for the district court

is to find that jurisdiction exists and deal with the objection as a direct attack on the merits

of the plaintiff's case.'"  <u>Id.</u> (quoting <u>Williamson v. Tucker</u>, 645 F.2d 404, 412 (5th Cir. May

20, 1981)).[3]  At least for subject matter jurisdiction, "[w]here the jurisdictional issues are

intertwined with the substantive merits, 'the jurisdictional issues should be referred to the

merits, for it is impossible to decide one without the other.'"  <u>Eaton v. Dorchester</u>

<u>Development, Inc.</u>, 692 F.2d 727, 733 (11th Cir. 1982).

     Arguably, challenges to personal jurisdiction that also implicate the merits should

be treated similarly.  Several courts have held that a plaintiff may overcome a motion to

---

[2] <u>Venetian Salami</u> holds that an evidentiary hearing is required when affidavits conflict.  554 So.2d at 503.  Although Rule 4(k)(1)(A) directs the Court to apply state law to determine a defendant's amenability to service of process, the procedures the Court must or may use in deciding that question are governed by federal common law, not state law.  <u>Cf.</u> <u>Donovan v. Penn Shipping Co.</u>, 429 U.S. 648 (1977) (per curiam) (federal common law rule providing that a plaintiff may not appeal from a remittitur order he has accepted governs even in diversity cases).
[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

dismiss for lack of personal jurisdiction by making only a prima facie showing of the facts relevant to both jurisdiction and the merits.[4]  Requiring only a prima facie showing for facts relevant to both personal jurisdiction and the merits avoids unnecessary and premature adjudication and moots difficult questions surrounding the applicability of law-of-the-case and preclusion doctrines to jurisdictional rulings.[5]  Jetco Electronic Indus., Inc. v. Gardiner, 473 F.2d 1228, 1232 (5th Cir. 1973), abrogated on other grounds by United States v. Cooper, 135 F.3d 960 (5th Cir. 1998).  See generally Kevin M. Clermont, Jurisdictional Fact, 91 Cornell L. Rev. 973 (2006) (arguing for a prima facie standard for jurisdictional facts that overlap with the merits).

Moreover, there is substantial authority supporting the proposition that, in such a case, the district court may permit the case to proceed to general discovery and even trial before ruling on the question of jurisdiction.  See Wyatt, 686 F.2d at 283; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); see also Rice v. Nova Biomedical Corp., 38 F.3d 909, 915 (7th Cir. 1995) (noting that district court may defer ruling on 12(b)(2) motion

---

[4] See, e.g., Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982) ("When . . . personal jurisdiction is predicated on the commission of a tort within the state . . . the jurisdictional question involves some of the same issues as the merits of the case, and the plaintiff must make a prima facie case on the merits to withstand a motion to dismiss under Rule 12(b)(2)."); Data Disc, Inc. v. Sys. Technology Assocs., Inc., 557 F.2d 1280, 1285 n. 2 (9th Cir. 1977) ("[W]here the jurisdictional facts are enmeshed with the merits, the district court may decide that the plaintiff should . . . be required only to establish a prima facie showing of jurisdictional facts with affidavits and perhaps discovery materials."); Schramm v. Oakes, 352 F.2d 143, 149 (10th Cir. 1965); Kopff v. Battaglia, 425 F. Supp. 2d 76, 80 & n.3 (D.D.C. 2006); Vest v. Waring, 565 F. Supp. 674, 693 (N.D. Ga. 1983) ("[W]hen . . . a decision on the jurisdictional dispute also embraces questions of ultimate liability, and when the determination of the jurisdictional facts is intertwined with and potentially dispositive of the merits of the lawsuit, the plaintiff need only show 'threshold' or prima facie jurisdiction when the defendant challenges personal jurisdiction."); Gemini Enters., Inc. v. WFMY Television Corp., 470 F. Supp. 559, 565 n.4 (M.D.N.C. 1979); McLaughlin v. Copeland, 435 F. Supp. 513 (D. Md. 1977); Holfield v. Power Chem. Co., 382 F. Supp. 388 (D. Md. 1970).

[5] If the Court finds that Enbridge is not subject to its jurisdiction because Enbridge was not bound by the actions of Wheeler and Brown, and Amerifactors then sues Enbridge in a court where Enbridge is subject to personal jurisdiction, Amerifactors may be precluded from relitigating the question of whether Enbridge was bound.  See In re Sonus Networks, Inc., Shareholder Derviative Litigation, 499 F.3d 47, 59 (1st Cir. 2007) (noting that the "modern view" that jurisdictional dismissals are entitled to issue preclusive effect).  Conversely, if the Court finds that Enbridge is bound by the actions of Wheeler and Brown and therefore is subject to personal jurisdiction, it will have to choose between giving Enbridge an opportunity to relitigate the question or denying Enbridge its right to a jury trial on the issue.

Case 6:13-cv-01446-ACC-TBS   Document 19   Filed 11/07/13   Page 9 of 16 PageID 282

until trial if "it is infeasible or inconvenient to make a definitive determination of personal jurisdiction on the basis of affidavits or other evidence presented in a pretrial hearing"). This approach, like the prima facie approach, avoids premature and unnecessary adjudication as well as thorny preclusion and law-of-the-case problems.

There are drawbacks to these approaches. They risk subjecting defendants who in fact have not "purposefully avail[ed]" themselves of the protections and benefits of the forum state to the expense of litigating in the forum.[6] It is ultimately up to the district judge whether to apply the prima facie standard and when to rule on Enbridge's motion. If the district judge decides to resolve the motion now by taking evidence and finding facts, and does not apply the prima facie standard, jurisdictional discovery may be necessary. See Eaton, 692 F.2d at 729 (11th Cir. 1982) ("[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits."). When the question of jurisdiction is genuinely in dispute and the movant has access to facts relevant to the motion, refusing to allow jurisdictional discovery is an abuse of discretion. Id. at 729-30 (noting that jurisdictional discovery is "not entirely discretionary"); Mother Doe I v. Al Maktoum, 632 F. Supp. 2d 1130, 1145 (S.D. Fla. 2007). A plaintiff "must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction." Eaton, 692 F.3d at 732. This "qualified right" to jurisdictional discovery, Mother Doe, 632 F. Supp. 2d at 1145, applies where "factual allegations suggest the possible existence of requisite contacts between the defendant and the forum state with 'reasonable particularity.'" Commissariat à L'Energie Atomique

---

[6] While forcing a defendant to litigate in the forum may impose significant expense, it does not implicate the defendant's due process rights. "[T]he individual interest protected" by the due process clause in the personal jurisdiction context is not in avoiding litigation but "in 'not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful contacts, ties, or relations.'" Van Cauwenberghe v. Biard, 486 U.S. 517, 526 (1988) (quoting Burger King, 471 U.S. at 471-72).

- 9 -

v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1323 (11th Cir. 2006) (quoting Mellon

Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1233 (3d Cir. 1992)).  To hold

otherwise would allow a defendant to defeat jurisdiction on the strength of a self-serving

affidavit "while withholding information on its contacts to the forum."  El-Fadl v. Cent.

Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996).

     If a court chooses to allow jurisdictional discovery, it enjoys broad discretion in

setting the scope of that discovery.  Washington v. Norton Mfg., Inc., 588 F.2d 441, 443

(5th Cir. 1979).  In exercising this discretion, the court must be cognizant that the purpose

of jurisdictional discovery "is to ascertain the truth of the allegations or facts underlying

the assertion of personal jurisdiction."  Atlantis Hydroponics, Inc. v. Int'l Growers Supply,

Inc., 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013).

## DISCUSSION

     A.  Amerifactors is Entitled to Jurisdictional Discovery

     Discovery is appropriate because the allegations in Amerifactors' complaint

"suggest the possible existence of requisite contacts between [Enbridge] and [Florida]

with reasonable particularity."  Commissariat à L'Energie Atomique, 395 F.3d at 1323

(11th Cir. 2006) (internal quotations and citations omitted).  Amerifactors alleges that

Enbridge executed the contracts and later breached them when it failed to make required

payments to Amerifactors in Florida, as required by the contracts.  (Doc. 2, ¶¶ 12, 19).

Amerifactors has attached to its complaint exhibits including emails from Wheeler and

Brown sent from enbridge.com email addresses.  (Doc. 2-1, p. 16-17).  Each email

contains as an attachment an executed contract referring specifically to "Enbridge, Inc."

and bearing the signature of Wheeler or Brown.  (Doc. 2-1, pp. 14-17; Doc. 2-2, p. 1).  On

the contracts, Wheeler lists his title as Construction Superintendent and Brown lists his title as Construction Supervisor.  (Doc. 2-1 p. 15; Doc. 2-2, p. 1).

The disputed issue–whether Wheeler and Brown's execution of the contracts can be attributed to Enbridge–is material to determining whether this Court has jurisdiction over Enbridge.  If Enbridge is not bound by the contracts, then it is not a party to a contract requiring performance in Florida and is probably not subject to Florida long-arm jurisdiction.  If Enbridge is bound by Wheeler or Brown's conduct, then it is subject to Florida long-arm jurisdiction because it allegedly "breach[ed] a contract in this state by failing to perform acts required by the contract to be performed in this state."  FLA. STAT. § 48.193(1)(g).  If the Court finds that Enbridge is bound by the contracts, it is also likely to find that Enbridge has sufficient minimum contacts with the state of Florida to be haled into court here, because the contracts have "a substantial connection" to Florida.  McGee, 355 U.S. at 524.

Enbridge argues that because Plaintiff failed to submit an affidavit contradicting Robinson's affidavit, this case must be dismissed for lack of jurisdiction.  (Doc. 13, pp. 8-10).  In support of this contention, Enbridge points to Future Technology Today, Inc. v. OSF Healthcare Systems, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam), and Posner v. Essex Insurance Co., Ltd, 178 F.3d 1209, 1215 (11th Cir. 1999), as well as one unreported case from this district.[7]  Future Technology and Posner speak primarily to the appropriate standards for deciding the motion to dismiss itself when jurisdictional facts are disputed.  Future Technology does not mention discovery at all, and Posner

---

[7] Tissuenet Custom Applications, LLC v. Blood & Tissue Ctr. of Cent. Tex., No. 6:05-cv-01931-GAP-KRS, 2006 WL 2355575 (M.D. Fla. 2006).  Tissuenet does not support Enbridge's position, because the Court in Tissuenet granted jurisdictional discovery prior to deciding the defendant's motion to dismiss.  See Id., No. 6:05-cv-01931-GAP-KRS (M.D. Fla. Apr. 19, 2006) (Doc. 41, Order re: Motion to Dismiss for Lack of Personal Jurisdiction).

discusses it only in a footnote.  178 F.3d at 1214 n. 7.  In <u>Posner</u>, the court dismissed

plaintiffs' argument that the district court should have allowed jurisdictional discovery on

the grounds that the plaintiffs had failed to pursue any discovery in the eight months

between the filing of the complaint and the district court's dismissal of the case.  <u>Id.</u>  The

only reference to jurisdictional discovery in the <u>Posner</u> plaintiffs' filings was "on the first

page of [the plaintiffs'] memorandum in opposition to the motion to dismiss filed seven

and one-half months after the complaint and more than five months after the motion to

dismiss," and "even then," the <u>Posner</u> plaintiffs "failed to specify what they thought could

or should be discovered."  <u>Id.</u>  By contrast, Amerifactors served its first request for

jurisdictional discovery less than a month after suit was filed and before it was even

permitted to do so under the federal and local rules.  It filed its motion for leave to take

jurisdictional discovery less than a month and a half after filing suit and within the time for

responding to Enbridge's motion to dismiss.

To the extent Enbridge relies on the Robinson affidavit to support its motion,

<u>Posner</u> offers little comfort.  The Eleventh Circuit found the <u>Posner</u> defendant's affidavit

"of little significance to the jurisdictional question" because it contained little more than

"legal conclusions."  <u>Id.</u> at 1215.  Like the affidavit in <u>Posner</u>, the Robinson Affidavit

"explains [Enbridge]'s corporate structure and status; summarily asserts that [Enbridge]

never has done business in or directed contacts into Florida;" and "denies in a conclusory

way any other actions that would bring [Enbridge] within the ambit of the Florida long-arm

statute."  <u>Id.</u>  The most relevant assertion in the affidavit is that Wheeler and Brown "do

not have the power or authority to enter into contracts on behalf of Enbridge, Inc."  (Doc.

17-1, ¶ 11).  But this is also a legal conclusion that depends on facts including Enbridge's

manifestations to Wheeler, Brown, and third parties like Amerifactors.  <u>See</u> Restatement

(Third) Agency §§ 2.01 (actual authority); 2.03 (apparent authority).  Those are the sort of

facts a plaintiff has a "qualified right" to develop in jurisdictional discovery before the court

dismisses the case.

Finally, the fact that the same issue–the attributability of Wheeler and Brown's

conduct to Enbridge–bears on both jurisdiction and the merits also counsels strongly in

favor of permitting discovery.  Because attribution of Wheeler and Brown's conduct to

Enbridge is also central to the merits, discovery geared toward this issue now will mean

less discovery later should the Court allow the case to proceed.

B.  The Scope of Discovery

Amerifactors proposes a 60-day timetable for jurisdictional discovery, limited to the

following topics:

> a.  The relationship between the various related Enbridge
>     entities, including Enbridge, Inc. and the plaintiffs in
>     related, pending Texas state court litigation . . . ;
>
> b.  [T]he employers of Mr. Wheeler and Mr. Brown when they
>     executed the contracts that are attached to Plaintiff's
>     Complaint as Composite Exhibit 3 (as well as the
>     employers of Mr. Wheeler and Mr. Brown when they
>     executed a number of earlier contracts that were
>     purportedly signed on behalf of Enbridge, Inc.);
>
> c.  [T]he identity of the individuals that authorized Mr. Wheeler
>     and Mr. Brown to sign the contracts attached to Plaintiff's
>     Complaint as Composite Exhibit 3, as well as the employer
>     or employers of those authorizing individuals; [and]
>
> d.  Enbridge, Inc.'s Florida connections including but not
>     limited to Florida sales, contracts with other Florida based
>     entities, and advertising in the state of Florida.

(Doc. 12, pp. 3-4).  Amerifactors also proposes that it have ten days following the close of

this discovery period in which to file its response to Enbridge's motion to dismiss for lack

of personal jurisdiction.  Enbridge did not offer a different discovery plan in its opposition to Amerifactors' motion.

The first three topics upon which Amerifactors seeks discovery are aimed at evidence bearing directly on this dispute and are material to jurisdiction and the merits.  Discovery on these topics is therefore, appropriate.  The fourth topic goes farther, as it seeks discovery of matters that may bear little or no relation to this case.  Discovery on Enbridge's unrelated activities in Florida is appropriate only to the extent it might uncover facts that could influence the Court's determination of Enbridge's motion to dismiss.  Enbridge's contacts with Florida are relevant to specific jurisdiction minimum contacts analysis only to the extent that those contacts are related to this case.  Posner, 178 F.3d at 1220.  And, it seems doubtful that Enbridge has established contacts with this state that are so "continuous and systematic" as to render it "essentially at home" in Florida, and therefore subject to general jurisdiction in this Court.  Goodyear, 131 S. Ct. at 2851; see also FLA. STAT. § 48.193(2).  Amerifactors has offered only speculation that Enbridge "operat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture in this state or ha[s] and office or agency in this state" and that this suit "arises from" those activities.  FLA. STAT. § 48.193(1)(a).

Enbridge's other Florida contacts may be relevant to the extent they bear on the reasonableness prong of the due process analysis.  See Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 113–16 (1987); Burger King, 471 U.S. 482–85.  Because Enbridge bears the burden of establishing unreasonableness, the Court will permit inquiry into these matters to the extent they are raised in the Robinson affidavit.

## CONCLUSION

Therefore, upon due consideration:

1.  Amerifactors' Motion for Jurisdictional Discovery (Doc. 12) is **GRANTED**.

2.  The parties are granted leave to conduct jurisdictional discovery.

3.  The scope of jurisdictional discovery shall be limited to the following subjects:

    a.  The relationship between the various related Enbridge entities;

    b.  The past and current employers of Wheeler and Brown;

    c.  The identity of the individuals that authorized Wheeler and Brown to sign the contracts, as well as the employer or employers of those authorizing individuals; and

    d.  To the extent raised by the Robinson affidavit, Enbridge's Florida connections including but not limited to Florida sales, contracts with other Florida based entities, and advertising in the state of Florida.

4.  The deadline for jurisdictional discovery shall be January 31, 2014.  Each party shall timely serve discovery requests so that the Federal Rules of Civil Procedure allow for a response prior to the discovery deadline.  The Court may deny as untimely all motions to compel filed after the discovery deadline.

5.  Amerifactors may take the depositions of Terry Wheeler, Quinton Brown, and Tyler Wade Robinson.  All other depositions require leave of Court.

6.  Amerifactors shall have until February 14, 2014 to respond to Enbridge's Motion to Dismiss (Doc. 3).

**IT IS SO ORDERED.**

**DONE** and **ORDERED** in Orlando, Florida on November 7, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record